IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| FIRST MERCURY SYNDICATE, INC.<br>305 MADISON AVENUE<br>MORRISTOWN, NJ 07960,<br>　　　　　　　　　　　　　Plaintiff,<br><br>vs.<br><br>THE CITY OF MIAMI TOWNSHIP<br>2700 LYONS ROAD<br>MIAMISBURG, OH 45342-3720<br><br>AND<br><br>MATTHEW SCOTT MOORE<br>889 CHERRY BLOSSOM DRIVE<br>WEST CARROLLTON, OH 45449<br><br>AND<br><br>TIM WILSON<br>1090 WARE FARMS ROAD<br>SPRING CITY, TN 37381<br><br>AND<br><br>MICHELLE M. ANGEL, EXECUTRIX OF THE ESTATE OF THOMAS ANGEL<br>4797 POLEN DRIVE<br>KETTERING, OH 45440<br><br>AND<br><br>MARVIN SCOTHORN<br>6250 GERMANTOWN PIKE<br>DAYTON, OH 45439<br><br>AND | CASE NO.  3:22-cv-00258<br><br>JUDGE  Michael J. Newman<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

JOHN DIPIETRO
1024 WENBROOK DRIVE
KETTERING, OH 45429

AND

STEPHEN GRAY
1924 GONDERT AVENUE
DAYTON, OH 45403

AND

OTHER UNIDENTIFIED MEMBERS OF
THE MIAMI TOWNSHIP POLICE
DEPARTMENT
2660 LYONS ROAD
MIAMISBURG, OH 45342,

        Defendants.

  Plaintiff, First Mercury Syndicate, Inc. ("First Mercury"), by and through its undersigned counsel, as and for its Complaint for Declaratory Judgement against Defendants The City of Miami Township ("Miami Township"), Matthew Scott Moore, Tim Wilson, Thomas Angel, Marvin Scothorn, John DiPietro, Stephen Gray and other Unidentified Members of the Miami Township Police Department , states as follows:

## NATURE OF THE ACTION

  1. In this action, First Mercury seeks a determination of its rights and obligations under two insurance policies issued to Miami Township in connection with an Underlying Action (as defined herein) filed by Roger Dean Gillispie ("Gillispie") which asserts certain claims against Miami Township, Matthew Scott Moore, Tim Wilson, Thomas Angel, Marvin Scothorn, John DiPietro, Stephen Gray and other Unidentified Members of The Miami Township Police Department (collectively the "Miami Township Defendants ").

2

18805447_1

2. The Underlying Action (defined herein) is pending in the United States District Court for the Southern District of Ohio.

3. First Mercury, through the Illinois Insurance Exchange, issued two Governmental Entities Police Professional Liability Policies (collectively, the "First Mercury Policies") to named insured Miami Township, as described more fully below.

4. The Miami Township Defendants have tendered the claims asserted against them in the Underlying Action to First Mercury for a defense and indemnification under the Policies.

5. The scope of coverage available to the Miami Township Defendants in connection with the claims asserted against them in the Underlying Action is governed by the terms, conditions, and exclusions of the Policies.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this matter pursuant 28 U.S.C. § 1331(a)(1) and 28 U.S.C. § 1367 regarding the state law claims.

7. Plaintiff First Mercury is a corporation organized under the laws of Delaware with its principal place of business in Morristown, New Jersey. At all relevant times, First Mercury was authorized to conduct business in the State of Ohio.

8. Defendant Miami Township is an Ohio municipal corporation located in Montgomery County, Ohio, which operates the Miami Township Police Department.

9. Defendants Matthew Scott Moore, Tim Wilson, Thomas Angel, Marvin Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of the Miami Township Police Department are residents and citizens of Ohio who were at all relevant times, members of the Miami Township Police Department.

18805447 _1

10. Diversity jurisdiction exists because: (a) there is complete diversity of citizenship between Plaintiff First Mercury, on the one hand, and the Miami Township Defendants, on the other hand; and (b) the amount in controversy, including the potential costs of defending and indemnifying the Miami Township Defendants with regard to the Underlying Action exceeds $75,000.

11. Venue is appropriate under 28 U.S.C. § 1391(b)(2), as substantial part of the events or omissions giving rise to the Underlying Action occurred in this District, and the Policy was issued and delivered in this District.

12. An actual justiciable controversy exists between First Mercury, on the one hand, and, the Miami Township Defendants, on the other hand, and by the terms and provisions of Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 2201 and 2202, this Court is invested with the power to declare the rights and liability of the parties hereto and to grant such relief as it deems necessary and proper.

## THE UNDERLYING ACTION

13. On January 17, 2014, Gillispie filed an Amended Complaint in a lawsuit styled *Roger Dean Gillispie v. Miami Township, at al.*, Case No. 3:13-cv-00416 (the "Underlying Action"), filed in the United States District Court for the Southern District of Ohio. The Amended Complaint named the following as defendants: (1) the City of Miami Township; (2) Matthew Scott Moore, Tim Wilson, Thomas Angel, Marvin Scothorn, John DiPietro, Stephen Gray, other unidentified members of the Miami Township Police Department (individually, the "Defendant Officers"); (3) Montgomery County (the "County"); (4) Kenneth M. Betz, Denise Rankin, Ralph Nickoson, other unidentified employees of the Miami Valley Regional Crime Lab (the "County Defendants"); (5) Motors Liquidation Company f/k/a General Motors Corporation, General

Motors, LLC f/k/a General Motors Company and NGMCO, Inc. (collectively, "GM"); (6) Rick Wolfe, Keith Stapleton, Robert Miller, David Burke, Robert Burke, and other unidentified persons (the "GM Defendants"). A true and accurate copy of the Amended Complaint is attached hereto as Exhibit A.

14. The Amended Complaint alleges that, on August 20, 1988, two twin sisters reported that they were sexually assaulted and raped. The victims provided a description of the attacker to the Miami Township Police Department (the "Miami Township PD") which contradicted Gillispie's features. The Amended Complaint further alleges that another woman reported a similar incident that allegedly happened to her on August 5, 1988, and also provided authorities a description of the attacker that significantly contradicted Gillispie's features. Ex. A. at ¶¶ 18-24.

15. The Amended Complaint alleges that Gillispie was employed as a security guard for General Motors in Dayton Ohio from 1985 to the spring of 1990. The Amended Complaint further alleges that the GM Defendants supervised Gillispie, and allegedly harbored malice against Gillispie, targeting him for unfair treatment and agreed amongst themselves to cause Gillispie difficulties and eventual termination of his employment. Ex. A. at ¶¶ 29-35.

16. The Amended Complaint alleges that, after his termination, Rick Wolfe used his connections at the Miami Township PD to implicate Gillispie in the aforementioned 1988 rapes. Ex. A. at ¶¶ 33-35.

17. The Amended Complaint further alleges that the Miami Township PD, including Marvin Scothorn, investigated the GM Defendants' contention that Gillispie perpetrated the August 1988 rapes. The Amended Complaint further alleges that this investigation, conducted by Detective Bailey and Sergeant Fritz, ultimately excluded Gillispie as a suspect. Ex. A. at ¶¶ 36-42.

5

18. The Amended Complaint alleges that, in June 1990, the investigation by the Miami Township PD was reassigned to Matthew Scott Moore ("Detective Moore") by Tim Wilson, Thomas Angel, Marvin Scothorn. Ex. A. at ¶ 43.

19. The Amended Complaint further alleges that Detective Moore and others allegedly fabricated evidence, withheld and destroyed evidence and unlawfully undermined Gillispie's defense, and provided false and misleading testimony at Gillispie's criminal trials. Ex. A. at ¶¶ 44-65.

20. The Amended Complaint alleges that, after a jury trial in 1991, Gillespie was convicted of the sexual assaults of the three victims of the 1988 rapes. Ex. A. at ¶ 66.

21. The Amended Complaint alleges that, after Gillispie's trial, hair samples that had been collected at the crime scene were located and Gillispie was granted a new trial. The Amended Complaint further alleges that, after the retrial, despite an order requiring the evidence to be retained, this exculpatory evidence was allegedly lost and destroyed and, similarly, clothing belong to one of the sexual assault victims containing exculpatory evidence was allegedly returned to the owner, compromising and destroying the exculpatory evidence. Ex. A. at ¶¶ 67-71.

22. Gillispie was first convicted on February 12, 1991, and then again convicted on June 12, 1991, after a retrial following a mistrial.

23. Gillispie was found guilty of all sixteen counts charged in the indictment and was sentenced to between 22 to 56 years in prison.

24. Following his conviction, Gillispie sought relief from his conviction in both state and federal court.

25. On December 15, 2011, a conditional writ of habeas corpus was granted and the state of Ohio was ordered to release Gillispie from prison, concluding that officers of the Miami

Township PD had committed Brady violations during the 1991 trial. The December 15, 2011 order was later affirmed by the Sixth Circuit Court of Appeals.

26. In December 2013, Mr. Gillespie filed the Underlying Action pursuant to 42 U.S.C. § 1983, and amending his complaint on January 17, 2014.

27. In the Amended Complaint filed in the Underlying Action, Gillespie alleges misconduct including Brady violations on the part of multiple defendants, including the Miami Township Defendants, throughout the investigation and trial of Gillespie.

28. The Amended Complaint alleges that, under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10L.E.2d 215 (1963), criminal defendants are entitled to disclosure of exculpatory evidence in the government's possession. The Amended Complaint further alleges that the Miami Township Defendants violated his Brady rights, among other things, during his criminal trial by withholding exculpatory evidence.

29. The Amended Complaint alleges the following counts against the Township and the Defendants Officers: Count I: 42 U.S.C. § 1983 –Suppression of Exculpatory Materials; Count II: 42 U.S.C. § 1983 – Suggestive Identification; County III: 42 U.S.C § 1983 – Fabricated Evidence; Count [IV]: 42 U.S.C. § 1983 – Malicious Prosecution; Count V: 42 U.S.C. § 1983 – Destruction of Exculpatory Evidence; Count VI: Ohio State Law – Malicious Prosecution; Count VII: Ohio State Law – Infliction of Emotional Distress; Count VIII: Ohio State Law – Spoliation of Evidence; and Count IV: Ohio State Law – Indemnification as to Ohio Revised Code § 1729.031. Ex. A. at ¶¶ 76-127.

30. The claims asserted in the Underlying Action against the majority of the Miami Township Defendants have been dismissed. However, the claims asserted against Detective

Moore, who was the main detective involved in the investigation and prosecution of Gillispie, have not been dismissed.

31. Detective Moore filed a motion to dismiss the claims asserted against him in the Underlying Action based on qualified immunity, which was denied. Detective Moore filed a Notice of Appeal of the ruling with the U.S. Sixth Circuit Court of Appeals and that appeal is currently pending.

## DECISION IN OTARMA ET AL. V. MIAMI TOWNSHIP ET AL.

32. On October 11, 2017, the Ohio Township Association Risk Management Authority ("OTARMA"), a political subdivision risk pool which provided liability insurance for certain claims against its members, filed a declaratory judgment action against Miami Township in the Common Pleas Court of Montgomery County, Ohio, Civil Division, styled as *OTARMA et al. v. Miami Township et. al.*, Case No. 2017 CV 04749 (the "Declaratory Action").

33. In its Complaint for Declaratory Judgment against Miami Township ("OTARMA's Declaratory Complaint") OTARMA alleged that, beginning in 1996, Miami Township became a member of OTARMA and entered into the pool's Intergovernmental Contract pursuant to which OTARMA agreed, *inter alia*, to provide payment of its members' legal defense and claims. A Copy of OTARMA's Declaratory Complaint is attached as Exhibit B.

34. OTARMA's Declaratory Complaint alleges that Miami Township tendered the defense of the Underlying Action to OTARMA and that OTARMA accepted the defense of the Miami Township Defendants subject to a reservation of rights. Ex. B at para. 24-25.

35. In its Declaratory Action, OTARMA sought a declaration from the court that it owed no obligation to provide a defense or indemnity to the Miami Township Defendants in connection with the claims asserted against them in the Underlying Action.

8

36. On May 3, 2022, OTARMA filed a Renewed Motion for Summary Judgment Requesting Declaratory Judgment in the Declaratory Action.

37. In its Renewed Motion for Summary Judgment, OTARMA alleged that the Declarations of its policy contained a retroactive date for Wrongful Acts of May 28, 1994 and a retroactive date of July 24, 1996 for law enforcement liability claims and general liability claims.

38. On July 29, 2022, the court in the Declaratory Action granted OTARMA's Renewed Motion for Summary judgment finding that the OTARMA policy was not applicable to the claims asserted against the Miami Township Defendants in the Underlying Action and, therefore, OTARMA owed no duty to provide a defense or indemnity to Miami Township in connection with the Underlying Action. See July 29, 2022 Decision and Entry attached hereto as Exhibit C, p. 9-10. In its ruling, the court in the Declaratory Action agreed with the District Court's findings in the Underlying Action that the factual basis of Gillispie's remaining counts in the Underlying Action "all arise out of [Detective Moore's] conduct that predates Gillispie's conviction in 1991." Exhibit C, p. 9. The court in the declaratory action further found that the District Court's decision "eliminates the materiality of the factual issue regarding disappearance/evaporation of probable cause. Ex. C at p. 10. Finally, the court in the Declaratory Action found that: "the relevant dates for the malicious prosecution cause of action and the Section 1983 civil rights claims against Detective Moore is prior to Gillispie's conviction in 1991." Ex. C at p. 9-10.

39. Accordingly, based on the retroactive dates contained in OTARMA's policy, the court in the Declaratory Action concluded that the OTARMA contract was not effective until 1994 at the earliest and, therefore, was not applicable to the claims asserted against the Miami Township Defendants in the Underlying Action. Ex. C at p. 10.

9

18805447 _1

## THE POLICY

40. First Mercury, through the Illinois Insurance Exchange, issued two Governmental Entities Police Professional Liability Policies (collectively, the "First Mercury Policies") to named insured Miami Township.

41. First Mercury issued Policy DOL181879 for the policy period of July 31, 1993 to July 31, 1994 (the 1993 Policy), with limits of $500,000 per occurrence, a $1,000,000 general aggregate, and a $5,000 deductible. A true and accurate copy of the 1993 Policy is attached hereto as Exhibit D.

42. The 1993 Policy contain the following pertinent language:

**GOVERNMENTAL ENTITIES POLICY PROFESSIONAL LIABILITY COVERAGE**
**NOTICE**
**THIS INSURANCE DOES NOT APPLY TO "PERSONAL INJURY" OR "PROPERTY DAMAGE" THAT TAKES PLACE BEFORE THE RETROACTIVE DATE SHOWN IN THE DECLARATIONS…**
**SECTION I – COVERAGE**
1. Insuring Agreement

   We will pay those sums that the "Insured" becomes legally obligated to pay as "damages" because of "personal injury" or "property damage" to which this insurance applies. We will also pay those sums or perform those acts or services as are indicated under CLAIM EXPENSES. This insurance does not apply to "personal injury" or "property damage" that takes place before the retroactive date shown in the Declarations or occurs after the "policy period." This insurance does not apply to any "claim" made against you prior to the inception of the "policy period." The "personal injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory" and arise out of the occupancy, maintenance or use of the "Insured's" law enforcement premises or the "Insured's" operations in the performance of or failure to perform official law enforcement duties.

   \* \* \*

43. The Declarations of the 1993 Policy states that the policy has a July 31, 1993 retroactive date. Ex. D at p. 1.

44. First Mercury also issued Policy DOL201559 for the policy period of July 31, 1994 to July 31, 1995 (the 1994 Policy), with limits of $500,000 per occurrence, a $1,000,000 general

aggregate, and a $5,000 deductible. A true and accurate copy of the 1994 Policy is attached hereto as Exhibit E.

45. The 1994 Policy contains the following pertinent language:

**GOVERNMENTAL ENTITIES POLICY PROFESSIONAL LIABILITY COVERAGE**

**NOTICE**
**THIS INSURANCE DOES NOT APPLY TO "PERSONAL INJURY" OR "PROPERTY DAMAGE" THAT TAKES PLACE BEFORE THE RETROACTIVE DATE SHOWN IN THE DECLARATIONS…**
**SECTION I – COVERAGE**
2. Insuring Agreement

We will pay those sums that the "Insured" becomes legally obligated to pay as "damages" because of "personal injury" or "property damage" to which this insurance applies. We will also pay those sums or perform those acts or services as are indicated under CLAIM EXPENSES. This insurance does not apply to "personal injury" or "property damage" that takes place before the retroactive date shown in the Declarations or occurs after the "policy period." This insurance does not apply to any "claim" made against you prior to the inception of the "policy period." The "personal injury" or "property damage" must be caused by an "occurrence." The "occurrence" must take place in the "coverage territory" and arise out of the occupancy, maintenance or use of the "Insured's" law enforcement premises or the "Insured's" operations in the performance of or failure to perform official law enforcement duties.

\* \* \*

46. The Declarations of the 1994 Policy states that the policy has a July 31, 1994 retroactive date. Ex. E at p. 1.

47. The First Mercury Policies contain the following pertinent language:

**SECTION V – DEFINITIONS**
\* \* \*
3. "Claim" means:
   A. A written demand received by you or us, for "damages," money or services arising out of an "occurrence" or an alleged "occurrence."

   B. The service of a summons on a "suit" or a demand for arbitration proceedings against you arising out of an "occurrence" or an alleged "occurrence."

\* \* \*

11

5.     "Damages" means compensatory money damages only and does not include punitive or exemplary damages, fines or penalties. "Damages" does not include defense of actions, suits or proceedings for non-monetary relief or redress.

* * *

7.     "Insured" means:

    A. The law enforcement department or governmental entity designed in the Declarations;

    B. The individual law enforcement officers or other employees and volunteers of such department or entity as are regularly engaged in law enforcement duties, but only while in the furtherance of the official pursuits of the law enforcement department or entity designated in the Declarations;

    C. The Governmental Entity or subdivision of which the designated law enforcement department or entity is a part and public officials thereof, but only with respect to a "claim" made against such Governmental Entity or such public officials thereof solely by reason of errors, omissions or negligent acts of the duly constituted law enforcement department or entity designated in the Declarations, or of the law enforcement officers, employees or volunteers thereof and only with respect to their activities while in furtherance of the official pursuits of the law enforcement department or entity.

* * *

10.    "Occurrence" means an event, including continuous or repeated exposure to substantially the same general harmful conditions.

11.    "Personal injury" means:

    A. Bodily injury, sickness, disease or disfiguration sustained by any person, including death resulting from any of these at any time; or

    B. Mental injury, anguish, shock, humiliation or;

    C. Libel, slander, defamation of character; or

    D. Assault and battery, false arrest, false imprisonment, malicious prosecution, false or improper service of process; or

    E. Wrongful entry, eviction, or other invasion of the right of public occupancy.

12.    "Policy Period" shall mean the period of one (1) year following the effective date and hour of this policy or any anniversary thereof, or if the time between the effective date or any anniversary and the termination or cancellation of the policy is less than (1) one year, such lesser period.

* * *

16.    "Suit" means a civil proceeding in which "damages" because of "personal injury" or "property damage" to which this insurance applies are alleged. "Suit" includes

an arbitration proceeding alleging such "damages" to which you must submit or submit with our consent.

\* \* \*

48. The First Mercury Policies contain a "Civil Rights Coverage" endorsement which provides, in pertinent part, as follows:

\* \* \*

## CIVIL RIGHTS COVERAGE

This endorsement modifies insurance provided under the following:
GOVERNMENTAL ENTITIES POLICE PROFESSIONAL LIABILITY COVERAGE PART

\* \* \*

The following is added to Definition 11. "Personal Injury."
   A. Deprivation of any rights, privileges or immunities secured by the Constitution of the United States of America or of any State or by the civil rights statutes of the United States of America, 42 U.S.C. 1983, or any other statute of the United States of America or of any State.

Ex. D and E at p. 5-20

## THE DISPUTE

49. Miami Township has sought a defense and indemnity under the First Mercury Policies for the claims asserted against it in the Underlying Action.

50. On August 5, 2014 and again on September 20, 2021, First Mercury agreed to defend Miami Township in connection with the claims asserted in the Underlying Action, subject to a complete reservation of its right to withdraw from the defense upon reasonable notification to Miami Township of its intention to do so, as well as the right to disclaim any obligation to indemnify Miami Township, should it be determined that there is no coverage afforded under the terms of the First Mercury Policies for the claims asserted in the Underlying Action.

51. On August 12, 2022, Miami Township was advised that, effective September 1, 2022, OTARMA would no longer provide a defense to the Miami Township Defendants in the Underlying Action.

13

52. On August 25, 2022, Miami Township tendered the defense of the Miami Township Defendants in the Underlying Action to First Mercury.

53. First Mercury now brings this action to obtain a judicial determination that it owes no duties under the First Mercury Policies to defend or indemnify Miami Township in connection with the claims asserted against it in the Underlying Action.

## COUNT I
### (No Coverage Afforded for Personal Injury that Takes Place Before the Retroactive Dates of the Policies)

54. First Mercury incorporates be reference herein paragraphs 1 through 53, as if fully set forth herein.

55. The Insuring Agreement of the Governmental Entities Police Professional Liability Coverage Part of the First Mercury Policies provides, in pertinent part, that "[First Mercury] will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'property damage' to which this insurance applies." See. Ex. D and E at p. 5.

56. The Insuring Agreement of the Governmental Entities Police Professional Liability Coverage Part further provides, in pertinent part, that "[t]his insurance does not apply to 'personal injury' or 'property damage' that takes place before the retroactive date shown in the Declarations or occurs after the 'policy period.'" See. Ex. D and E at p. 5.

57. The First Mercury Policies define "Insured" as "[t]he law enforcement department or governmental entity designed in the Declarations,"; "[t]he individual law enforcement officers or other employees and volunteers of such department or entity as are regularly engaged in law enforcement duties, but only while in the furtherance of the official pursuits of the law enforcement department or entity designated in the Declarations"; and "[t]he Governmental Entity or subdivision of which the designated law enforcement department or entity is a part and public

officials thereof, but only with respect to a 'claim' made against such governmental entity or such public officials thereof solely by reason of errors, omissions or negligent acts of the duly constituted law enforcement department or entity designated in the Declarations, or of the law enforcement officers, employees or volunteers thereof and only with respect to their activities while in furtherance of the official pursuits of the law enforcement department or entity." " Ex. D and E at p. 12.

58. The First Mercury Policies define "personal injury" to mean "bodily injury, sickness, or disease sustained by a person including death resulting from any of these at any time; or [m]ental injury, anguish, shock, humiliation; or […] [a]ssault and battery, false arrest, false imprisonment, malicious prosecution, false or improper service of process." This definition was modified by the Civil Rights Coverage Endorsement to include "[d]eprivation of any rights, privileges or immunities secured by the Constitution of the United States of America or of any State or by the civil rights statutes of the United States of America, 42 U.S.C. 1983, or any other statute of the United States of America or of any State" to the definition of "personal injury." See. Ex. D and E at p. 13 and 20.

59. The First Mercury Policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." See Ex. D and E at p.13.

60. The First Mercury Policies define "Policy Period" to mean "the period of one (1) year following the effective date and hour of this policy or any anniversary thereof, or if the time between the effective date or any anniversary and the termination or cancellation of the policy is less than (1) one year, such lesser period." See Ex. D and E at p.13.

61. The District Court found in the Underlying Action that the factual basis of Gillispie's remaining counts in the Underlying Action "all arise out of [Detective Moore's] conduct that predates Gillispie's conviction in 1991." Ex. C at p. 9-10.

62. The court in the Declaratory Action agreed with the District Court's findings in the Underlying Action that the factual basis of Gillispie's remaining counts in the Underlying Action "all arise out of [Detective Moore's] conduct that predates Gillispie's conviction in 1991" and further found that the District Court's decision "eliminates the materiality of the factual issue regarding disappearance/evaporation of probable cause. Ex. C at p. 10. Accordingly, the court in the Declaratory Action found that: "the relevant dates for the malicious prosecution cause of action and the Section 1983 civil rights claims against Detective Moore is prior to Gillispie's conviction in 1991." Ex. C at p. 9-10.

63. The Insuring Agreement of the Governmental Entities Police Professional Liability Coverage Part of the First Mercury Policies provides, in pertinent part, that "[t]his insurance does not apply to 'personal injury' or 'property damage' that takes place before the retroactive date shown in the Declarations or occurs after the 'policy period.' See. Ex. at D and E at p. 5.

64. The Declarations of the 1993 Policy states that the policy has a July 31, 1993 retroactive date. Ex. D at p. 1.

65. The Declarations of the 1994 Policy states that the policy has a July 31, 1994 retroactive date. Ex. E at p. 1.

66. The alleged acts and/or omissions which serve as the basis for the malicious prosecution claims asserted against the Miami Township Defendants in the Underlying Actions "all arise out of [Detective Moore's] conduct that predates Gillispie's conviction in 1991",

16

approximately two years before the retroactive date of the 1993 Policy and three years before the retroactive date of the 1994 Policy.

67. As a result, the claims asserted against the Miami Township Defendants in the Underlying Action fail to satisfy the requirements of the Insuring Agreement of the Governmental Entities Police Professional Liability Coverage Part of the First Mercury Policies because such claims allege that Gillispie sustained "personal injury" that took place before the retroactive dates of the First Mercury Policies as a result of acts and/or omissions of the Miami Township Defendants.

68. Accordingly, the Governmental Entities Police Professional Liability Coverage Part of the First Mercury Policies does not afford coverage for the claims asserted against the Miami Township Defendants in the Underlying Action.

WHEREFORE, First Mercury Syndicate, Inc. seeks a judgment that it owes no duty to defend or indemnify Defendants The City of Miami Township, Matthew Scott Moore Tim Wilson, Thomas Angel, Marvin Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of The Miami Township Police Department in connection with the claims asserted against them in the Amended Complaint filed in the Underlying Action.

**PRAYER FOR RELIEF**

Plaintiff First Mercury Syndicate, Inc. respectfully requests the entry of an order and judgment in its favor, and against Defendants The City of Miami Township, Matthew Scott Moore Tim Wilson, Thomas Angel, Marvin Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of The Miami Township Police Department, declaring as follows:

(1) This court has jurisdiction over the parties and the subject matter of this litigation;

(2) The First Mercury Policies do not provide coverage to Defendants The City of Miami Township, Matthew Scott Moore Tim Wilson, Thomas Angel, Marvin

Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of The Miami Township Police Department for the claims asserted against them in the Amended Complaint filed in the Underlying Action;

(3) First Mercury Syndicate, Inc. does not owe a duty under the First Mercury Policies to defend Defendants The City of Miami Township, Matthew Scott Moore Tim Wilson, Thomas Angel, Marvin Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of The Miami Township Police Department in connection with the claims asserted against them in the Amended Complaint filed in the Underlying Action;

(4) First Mercury Syndicate, Inc. does not owe a duty to indemnify Defendants The City of Miami Township, Matthew Scott Moore Tim Wilson, Thomas Angel, Marvin Scothorn, John Dipietro, Stephen Gray, and other Unidentified Members of The Miami Township Police Department in connection with the claims asserted against them in the Amended Complaint filed in the Underlying Action;

(5) First Mercury Syndicate, Inc. is entitled to recover its reasonable costs and expenses, including attorney fees; and

(6) For such other and further relief as the Court deems proper.

Respectfully submitted,

*/s/ Moira H. Pietrowski*
Moira H. Pietrowski (70308)
mpietrowski@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308
Phone: 330.376.2700
Fax: 330.376.4577
And
James J. Hickey (Illinois Bar No. 6308024)
(pro hac to be filed)
Michael Bishop (Illinois Bar No. 6331277)
(pro hac to be filed)
KENNEDYS
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
Phone: 312.800.5000
Fax: 312.800.5010
James.Hickey@Kennedyslaw.com
Michael.Bishop@Kennedyslaw.com

*Attorneys for Plaintiff*

18805447 _1